DAVID R. SINGH (Bar No. 300840)
david.singh@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway, 6th Floor
Redwood Shores, CA 94065-1134
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

DAVID L. YOHAI (admitted *pro hac vice*)
david.yohai@weil.com
BLAKE J. STEINBERG (admitted *pro hac vice*)
blake.steinberg@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Defendant GANNETT CO., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: GANNETT CO. INTERNET TRACKING LITIGATION | Lead Case No. 3:24-cv-05150-MMC<br>(Removed from San Francisco Superior Court Case No. CGC-24-615921)<br><br>Consolidated with No. 3:24-cv-08742-MMC<br><br>**DEFENDANT GANNETT CO., INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  November 7, 2025<br>Time: 9:00 AM<br>Dept.: Courtroom Number 7 – 19th Floor<br>Judge: Honorable Maxine M. Chesney |

1

**NOTICE OF MOTION AND MOTION**

2

TO THE COURT AND ALL PARTIES OF RECORD:

3      PLEASE TAKE NOTICE that on November 7, 2025, at 9:00 AM, or as soon thereafter as the

4   matter may be heard before the Honorable Maxine M. Chesney, in Courtroom 7, 19th Floor, Defendant

5   Gannett Co., Inc. ("Defendant" or "Gannett") will and hereby does move to dismiss the First

6   Consolidated Class Action Complaint filed by Plaintiffs Ryan Wu, Saber Khamooshi, and John Deddeh

7   ("Plaintiffs") in this action.  Gannett's motion to dismiss is brought pursuant to Federal Rules of Civil

8   Procedure 12(b)(1), 12(b)(2), 12(b)(6) and 9(b).

9      This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and

10   Authorities in support thereof, and all other pleadings and papers on file herein, and such argument and

11   evidence as may be presented to the Court.[1]

12

13   Dated: June 25, 2025                                    Respectfully submitted,

14                                                           WEIL, GOTSHAL & MANGES LLP

15
                                                             By:  /s/ David R. Singh
16                                                               DAVID R. SINGH

17                                                           Attorney for Defendant GANNETT CO., INC.

18

19

20

21

22

23

24

25

26

27

---

[1] All references to exhibits (*i.e.*, "Ex.") are to copies of the state court decisions attached to the
Declaration of Blake J. Steinberg.

28

1

# **TABLE OF CONTENTS**

2

**Page**

3 I.     PRELIMINARY STATEMENT .................................................................................1

4 II.    BACKGROUND ......................................................................................................3

5        A.    GANNETT'S ACTIVITIES IN CALIFORNIA...............................................3

6        B.    THE ALLEGED COLLECTION OF IP ADDRESS, BROWSER, AND
7              DEVICE/OPERATING SYSTEM DATA ...............................................................4

8 III.   STANDARD.............................................................................................................5

9        A.    RULE 12(B)(1) .........................................................................................5

10       B.    RULE 12(B)(2) .........................................................................................5

11       C.    RULE 12(B)(6) .........................................................................................5

12       D.    RULE 9(B).................................................................................................5

13 IV.   ARGUMENT ...........................................................................................................6

14       A.    RECENT NORTHERN DISTRICT DECISIONS ESTABLISH THAT
15             PLAINTIFFS LACK OF ARTICLE III STANDING .......................................6

16       B.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.............7

17             1.    Plaintiffs Fail to Establish General Jurisdiction............................................7

18             2.    Plaintiffs Fail to Establish Specific Jurisdiction ..........................................8

19       C.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM .......................11

20             1.    Plaintiffs Fail to Plausibly Allege a Violation of the CDAFA .................11

21             2.    Plaintiffs Fail to Plausibly Allege a Violation of CIPA............................14

22             3.    Plaintiffs Fail to Plausibly Allege a Violation of the California
23                   Constitution..............................................................................................22

24             4.    Plaintiffs Fail to State An Unjust Enrichment Claim................................23

25             5.    Plaintiff Fails to State A California Unfair Competition Law Claim ........24

26 V.    CONCLUSION.......................................................................................................25

27

28

---

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Processor Litig.*,
2022 WL 2064975 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622 (9th Cir.
Sept. 13, 2023) ...........................................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................................5

*Aviles v. LiveRamp. Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)......................................15, 19, 20

*Blanco v. County of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015)........................................................................23

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ...........................................................................10, 11

*Bristol-Meyers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017)....................................................................................................10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......................................................................24

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................................................14

*Camacho v. DG Premium Brands LLC*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025).............................18, 19, 20, 21

*Carolus v. Nexstar Media Inc.*,
2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) ..........................................................6, 7

*In re Carrier IQ, Inc., Consumer Privacy Litigation*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......................................................................12

*Casillas v. BOP LLC*,
No. 24STCV15581 (Cal. Super. Ct. June 18, 2025).................................................21

*Casillas v. Transitions Optical Inc.*,
No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024)...............................16

*Chrisman v. City of Los Angeles*,
155 Cal. App. 4th 29 (2007) .......................................................................................12

*Clausing v. S.F. Unified Sch. Dist.*,
  221 Cal. App. 3d 1224 (1990) ...................................................................23

*Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*,
  2021 WL 3053201 (N.D. Cal. July 20, 2021) ....................................................9, 10

*Conohan v. Rad Power Bikes Inc.*,
  2025 U.S. Dist. LEXIS 72865 (C.D. Cal. Apr. 3, 2025) ...............................21

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) .......................................................8

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ...............................................13, 14

*Crim. Prods., Inc. v. Doe*,
  2016 WL 6581850 (S.D. Cal. Nov. 7, 2016) .......................................20, 23

*Custom Packaging Supply, Inc. v. Phillips*,
  2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ..............................................12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).........................................................................7, 8

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) .....................................................25

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ...................................................14

*Esparza v. Kohl's, Inc.*,
  723 F. Supp. 3d 934 (S.D. Cal. 2024)......................................................22

*In re Facebook Priv. Litig.*,
  2011 WL 6176208 (N.D. Cal. Nov. 22, 2011), *rev'd in part on other grounds*, 572
  F. App'x 494 (9th Cir. 2014) ................................................................13

*Fayer v. Vaughn*,
  649 F.3d 1061 (9th Cir. 2011) .................................................................5

*Fogelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2100), *as modified* (June 7, 2011)......................23

*Fregosa v. Mashable, Inc.*,
  2025 WL 1083214 (N.D. Cal. Apr. 10, 2025) ........................................10

*Gabrielli v. Insider, Inc.*,
  2025 WL 522515 (S.D.N.Y. Feb. 18, 2025)..............................................7

*In re Google, Inc. Priv. Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................23

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) .....................................................12, 16

*Gutierrez v. Converse Inc.*,
  2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ..............................................12

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......................................................25

*Heeger v. Facebook, Inc.*,
  509 F.Supp.3d 1182 (N.D. Cal. 2020) .........................................................16

*Heiting v. Marriott Int'l, Inc.*,
  743 F. Supp. 3d 1163 (C.D. Cal. 2024) .......................................................10

*Hernandez v. Path, Inc.*,
  2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ...............................................24

*Hill v. NCAA*,
  7 Cal. 4th 1 (1994) ...............................................................................22, 23

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................23

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) .........................................................25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .......................................................................5

*Kellman v. Whole Foods Mkt., Inc.*,
  313 F. Supp. 3d 1031 (N.D. Cal. 2018) .........................................................3

*Khamooshi v. Politico LLC*,
  2025 WL 1408896 (N.D. Cal. May 13, 2025) ............................................6, 7

*Leeson v. Transam. Disability Income Plan*,
  671 F.3d 969 (9th Cir. 2012) .........................................................................6

*Lesh v. Cable News Network, Inc.*,
  767 F.Supp.3d 33 (S.D.N.Y. Feb. 20, 2025) .....................................17, 20, 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ......................................................................................14

*Licea v. Hickory Farms LLC*,
  2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ..............................16, 18, 20

*Lineberry v. AddShopper, Inc.*,
    2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ................................................................14

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....................................................................23

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................................................5

*Massie v. Gen. Motors Co.*,
    2021 WL 2142728 (E.D. Cal. May 26, 2021) ...........................................................11

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................................................11

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023)....................................................................7, 10

*Mirmalek v. L.A. Times Commc'ns LLC*,
    2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)............................................15, 17, 21

*Moody v. C2 Educational Systems, Inc.*,
    742 F. Supp. 3d 1072 (C.D. Cal. 2024) .....................................................................16

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) .......................................................................................25

*Morilha v. Alphabet Inc.*,
    2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ...........................................................22

*Nowak v. XAPO, Inc.*,
    2020 U.S. Dist. LEXIS 219575 (N.D. Cal. Nov. 20, 2020)......................................12

*Olmos v. Bank of Am., N.A.*,
    2016 WL 3092194 (S.D. Cal. June 1, 2016)..............................................................24

*Palacios v. Fandom, Inc.*,
    No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) ...........................15, 19, 20, 21

*Parnell Pharms., Inc. v. Parnell, Inc.*,
    2015 WL 5728396 (N.D. Cal. Sept. 30, 2015) ..........................................................10

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ..............................................................................5, 8, 9

*People v. Stipo*,
    195 Cal. App. 4th 664 (2011) .....................................................................................15

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ......................................................................................9

*Ramos v. Gap, Inc.*,
    2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ........................................................25

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ........................................................................8, 9

*Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*,
    2006 WL 3290416 (N.D. Cal. Nov. 13, 2006) ........................................................10

*Rodriguez v. First Am Fin. Corp.*,
    No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025) ..................................................21, 22

*Rodriguez v. Fountain9, Inc.*,
    2024 WL 3886811 (Cal. Super. Ct. L.A. Cnty. July 9, 2024) .........................................16, 17

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ........................................................25

*Rodriguez v. Google LLC*,
    2024 U.S. Dist. LEXIS 63161 (N.D. Cal. Apr. 5, 2024) ..............................................12

*Sanchez v. Cars.com*,
    2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ..................................................15, 18

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................5

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..............................................................13

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. Oct. 2024) ..........................................................15

*Smith v. Rack Room Shoes, Inc.*,
    2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ..........................................................14

*Smith v. Ygrene Energy Fund, Inc.*,
    2017 WL 3168519 (N.D. Cal. July 26, 2017) ........................................................24

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................24

*Steinle v. City & County of San Francisco*,
    230 F. Supp. 3d 994 (N.D. Cal. 2017), *aff'd*, 919 F.3d 1154 (9th Cir. 2019) ........................15

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
    313 F. Supp. 3d 1056 (N.D. Cal. 2018) ..............................................................12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..................................................................................5

*United States v. Acevedo-Lemus*,
  2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir.
  2020) ..........................................................................................................................22

*United States v. Auernheimer*,
  748 F.3d 525 (3d Cir. 2014)...................................................................................4, 13

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ...............................................................4, 13, 15, 22

*Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) .....................................................................................6

*United States v. Heckenkamp*,
  482 F.3d 1142 (9th Cir. 2007) ...................................................................................22

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .....................................................................................6

*Williams v. Facebook, Inc.*,
  384 F. Supp. 3d 1043 (N.D. Cal. 2018) ............................................................13, 14

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022).....................................................22

*Xu v. Reuters News & Media Inc.*,
  2025 WL 488501 (S.D.N.Y. Feb. 13, 2025)...............................................................7

*Yeh v. Twitter, Inc.*,
  2023 WL 8429799 (N.D. Cal. Dec. 4, 2023) ..............................................................6

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................................................22

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................................................................9

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................................25

Cal. Pen. Code § 502...............................................................................1, 2, 12, 13

Cal. Pen. Code § 629.51..................................................................................................21

Cal. Pen. Code § 637.2.............................................................................................2, 14

Cal. Pen. Code § 638.51................................................................................... *passim*

1

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................. *passim*

Fed. R. Civ. P. 12 ...........................................................................................1, 5, 6, 11

**Other Authorities**

Bill Analysis, Assemb. B. 929, Reg. Sess., at pgs. S, T (Cal. July 8, 2015),
https://tinyurl.com/39jcb5np ...........................................................................18, 20

https://sd14.senate.ca.gov/news/press-release/senator-anna-m-caballero-unveils-bold-
legislative-package-2025 ........................................................................................18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2        Gannett respectfully submits this memorandum of points and authorities in support of its motion

3   to dismiss the First Consolidated Class Complaint (the "Complaint") pursuant to Federal Rules of Civil

4   Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 9(b).

5   ## I.   PRELIMINARY STATEMENT

6        Despite multiple previews of Gannett's motion to dismiss arguments in motions to dismiss their

7   prior complaints, Plaintiffs have not cured the pleading deficiencies in their claims.  Indeed, while this

8   latest Complaint attempts to buttress the thin allegations concerning Gannett's purported ties to

9   California, the tracking technologies it purportedly uses on the USA Today website, and their purported

10  injuries suffered as a result of Gannett's conduct to try to establish personal jurisdiction and cross the

11  threshold from merely possible to plausible, it still fails to state any viable claims against Gannett.

12       As an initial matter, both this Court and Gannett have an ongoing obligation to ensure that the

13  Court has jurisdiction to adjudicate Plaintiffs' claims.  Recent Northern District decisions (decided after

14  Gannett removed this case to federal court) establish that Plaintiffs lack Article III standing to assert

15  their claims.  Indeed, in nearly identical cases brought by the same plaintiffs and the same counsel as

16  here, Judge Kim and Judge Chabria each recently held that merely alleging an invasion of privacy or

17  economic harm as a result of data collection (which is all Plaintiffs allege here) is insufficient to allege

18  a *concrete* injury that confers standing.  Federal courts are courts of limited jurisdiction and subject

19  matter jurisdiction is not waivable.  Therefore, based on the recent and indistinguishable cases, this Court

20  should dismiss and remand the case.

21       Personal jurisdiction is also lacking.  There is no general jurisdiction because Plaintiffs have not

22  alleged facts establishing that Gannett's connections to California render it "at home" in the state.  There

23  is no specific jurisdiction because Plaintiffs have not alleged facts establishing that Gannett expressly

24  aimed its collection towards Californian citizens, as opposed to merely operating a website that *could* be

25  accessed Californian citizens.

26       Beyond these threshold jurisdictional defenses, Plaintiffs have not stated any actionable claims.

27  *First*, Plaintiffs' claims arising out of the California Computer Data Access and Fraud Act ("CDAFA"),

28  Cal. Pen. Code § 502, is subject to the Rule 9(b) heightened pleading standard, but Plaintiffs have not

---

plead their claims with particularity.  Plaintiffs have not made any allegations establishing that Gannett circumvented technological barriers, including under their new theory that Gannett introduced a "computer contaminant" onto Plaintiffs' devices.  Plaintiffs also have not alleged that they "suffer[ed] damage or loss by reason of a violation" as required by the statute, and therefore lack statutory standing to assert a CDAFA claim.  Cal. Pen. Code § 502(e)(1).

*Second*, the Complaint does not allege a plausible violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630-638.55.  The statute only authorizes claims by "any person who has been *injured* by a violation of this chapter." *Id.* at § 637.2 (emphasis added).  But a growing number of courts have held that there is no protected privacy interest in a website visitor's IP address, device data, and browser/operating system data, and therefore the disclosure of such information (without more) is not an injury authorizing a private cause of action under CIPA.  Furthermore, the alleged disclosure here—*i.e.*, the transmission of IP address or browser and device/operating system data—is not actionable because it does not constitute the operation of a pen register or trap and trace device.  And finally, even if the alleged disclosure constitutes the operation of a pen register or a trap and trace device, which it does not, Gannett is still permitted to use a pen register or trap and trace device to operate and maintain its service under § 638.51(b)(1).

*Third*, Plaintiffs have not plausibly alleged a violation of the California Constitution because they have not alleged facts that plausibly satisfy any elements of the test set forth in the relevant case law, which requires a legally protected privacy interest, a reasonable expectation of privacy in the circumstances, and a serious invasion of privacy.  Additionally, under the relevant case law, a constitutional claim for invasion of privacy does not confer Plaintiffs a private right of action to seek money damages from Gannett.

*Fourth*, Plaintiffs' claim for unjust enrichment fails because unjust enrichment is not a standalone claim under California law.  Plaintiffs also have failed to allege facts making it plausible that Gannett unjustly retained a benefit they provided, or that Gannett made any misrepresentation to them.  Moreover, the Court should dismiss their unjust enrichment claim for the additional reason that it is duplicative of his statutory and constitutional privacy claims.

*Fifth*, Plaintiffs have failed to state a UCL claim.  To have standing to assert a UCL claim a

1    plaintiff must lose money or property as a result of the alleged unfair competition.   Plaintiffs have not

2    alleged facts making it plausible that they lost money or property as a result of the alleged collection.

3    Also, because Plaintiffs' statutory and constitutional privacy claims are deficient for the various reasons

4    set forth above, Plaintiff cannot satisfy the "unlawful" or "unfair" prongs of the UCL.

5         For these reasons, the Court should dismiss the Complaint with prejudice in its entirety.

6    **II.    BACKGROUND**

7         **A.    Gannett's Activities in California**

8         As Plaintiffs acknowledge, Gannett is organized in Delaware, with its principal place of business

9    in New York.  Compl. ¶ 14; Declaration of Polly Grunfeld Sack ("Sack Decl.") ¶ 4.[2]  Gannett operates

10   a website, usatoday.com, out of its offices in New York, New York.  Sack Decl. ¶ 5.  Plaintiffs assert

11   that Gannett operates an interactive website that places trackers on visitors' browsers (including

12   California visitors), but beyond that conclusory allegation, they offer little detail about Gannett's

13   conduct.  Compl. ¶¶ 22, 28.  The Complaint alleges that the USA Today website has a "chat function

14   and a toll-free number for Californians" to contact Gannett about local news stories, but does not explain

15   how these functions make the website interactive or what connection the functions have to any tracking

16   technologies.  *Id.* ¶ 23.  They offer no specific allegations as to how Gannett does anything more than

17   utilize third party code offered by the ad tech providers.  *Id.* ¶¶ 22, 29.  And more generally, Plaintiffs

18   do not allege with any specificity how Gannett targets the USA Today website or its interactive features

19   towards the California market or California residents.  *Id.*

20        Plaintiffs' allegations concerning Gannett's ties to California boil down to their claim that

21   Gannett "systematically and continuously does business in California and with California residents" and

22   that it registered with the state to do so, as well as the broad claim that the offending conduct occurred

23   in California.  *Id.* ¶ 15.  Plaintiffs allege Gannett has employees and offices in California, and that its

24   subsidiary digital marketing services company LocaliQ is headquartered in California, though they do

25   not allege how these business operations are connected to the conduct at issue in the Complaint.  *Id.* ¶¶

26

27   _____
     [2] The Court may consider the Declaration of Polly Grunfeld Sack in deciding the motion to dismiss for
     lack of personal jurisdiction. *See Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1042 (N.D.

28   Cal. 2018) ("The parties may submit, and the court may consider, declarations and other evidence outside
     the pleadings in determining whether it has personal jurisdiction.").

1    26-27.  Moreover, Plaintiffs allege that Gannett operates "eight daily publications in California" and that

2    each is "part of the USA TODAY Network."  *Id.* ¶¶ 16-17.  However, the Complaint incorrectly alleges

3    that all eight publications are "owned and operated by Gannett Co., Inc."  *Id.* ¶ 17.  In fact, all are owned

4    and operated through indirect and separate and legally distinct subsidiaries.  Sack Decl. ¶ 7.

5          **B.    The Alleged Collection of IP Address, Browser, and Device/Operating System Data**

6          Plaintiffs allege that Gannett "has embedded and implemented" certain third-party technologies

7    on the USA Today website, including Taboola, Amobee, and Adnxs.  Compl. ¶ 61.  In addition to IP

8    addresses, Plaintiff further alleges that each of these technologies uses third-party "cookie[s] to collect

9    and share that user's browser and device data . . . every time the user visits . . . the USA Today website."

10   *Id.* ¶ 63.  However, all of this information is disclosed as part of the routine operation of the internet

11   when individuals visit a website.  For example, an IP address "facilitates communication between

12   devices, and allows a communication signal to be routed from one [] device to another."  *Id.* ¶ 50; *see*

13   *also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (IP addresses are "provided to and

14   used by Internet service providers for the specific purpose of directing the routing of information" from

15   a "third party's servers").  Per Plaintiffs' own allegations, the technologies use the collected IP addresses

16   to allow them "to ascertain a user's location and target that user with advertisements tailored to that

17   specific location."  *See* Compl. ¶¶ 67, 78.  Similarly, browser and device/operating system data are

18   transmitted as part of a "user agent" string, which is disclosed so that a website can appropriately format

19   and deliver content to a website visitor. See *United States v. Auernheimer*, 748 F.3d 525, 530 (3d Cir.

20   2014) ("A user agent tells a website what kind of browser and operating system a user is running, so

21   servers that someone is attempting to access can format their responses appropriately.").  Plaintiffs'

22   Complaint admits this, alleging that information is transmitted "to the website server to help ensure that

23   a website is displaying content correctly and operating appropriately."  Compl. ¶ 46.

24         Plaintiffs allege the implementation of these technologies on the USA Today website violates

25   CDAFA, CIPA, and their right to privacy under the California Constitution.  *Id.* ¶ 7.  Plaintiffs also bring

26   claims for unjust enrichment and violation of California's UCL.  *Id.*  However, Plaintiffs still do not

27   plead facts specifying what monetary damages or loss they allegedly suffered.

28

III.    **STANDARD**

   A.    **Rule 12(b)(1)**

   A plaintiff bears the burden of showing that they have Article III standing to assert their claims. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).  To establish Article III standing, a plaintiff must demonstrate that they suffered "an injury in fact that is concrete, particularized, and actual or imminent," that "was likely caused by the defendant," and that "would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)).

   B.    **Rule 12(b)(2)**

   When a defendant moves to dismiss "for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).   Personal jurisdiction over a defendant is proper if "it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process."  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *See Schwarzenegger*, 374 F.3d at 801 (citation omitted).

   C.    **Rule 12(b)(6)**

   To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief.  *Id.* at 679.  On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

   D.    **Rule 9(b)**

   Under Rule 9(b), "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R.

Civ. P. 9(b)).  "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'"  *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).  When a complaint includes a claim "grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Where a defendant moves to dismiss a complaint under Rule 9(b) "for failure to plead with particularity," it is "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim."  *Id.*

## IV.    ARGUMENT

### A.    Recent Northern District Decisions Establish That Plaintiffs Lack of Article III Standing

While Gannett recognizes that it initially removed the *Wu* case to federal court, intervening case law requires consideration of whether Plaintiffs still have Article III standing.  "Subject matter jurisdiction can never be forfeited or waived' and federal courts have a continuing 'independent obligation to determine whether subject-matter jurisdiction exists.'" *See Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975, n.12 (9th Cir. 2012) (citation omitted).  Gannett, too, has an obligation to raise jurisdictional and standing issues with the Court.  *See Yeh v. Twitter, Inc.*, 2023 WL 8429799, at *3 (N.D. Cal. Dec. 4, 2023).

In the last three months, two courts in this District have dismissed cases brought by these Plaintiffs alleging that two other news website operator defendants used third-party tracking technologies embedded into their websites, and asserted identical causes of action against each.  *See Khamooshi v. Politico LLC*, 2025 WL 1408896 (N.D. Cal. May 13, 2025); *Carolus v. Nexstar Media Inc.*, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025).  Applying *TransUnion's* now axiomatic command that an "injury in law is not an injury in fact" to CIPA § 638.51 claims, Judges Chhabria and Kim separately held that the plaintiffs did not establish Article III standing based on the defendants' alleged use of tracking technologies.  *Khamooshi*, 2025 WL 1408896, at *6; *see Carolus*, 2025 WL 1338193 at *1.  In both cases, the courts found plaintiffs had not identified a concrete harm traditionally recognized at common law—more specifically, both courts found that the "browser and device data, IP addresses,

1  and 'other identifying information'" does not "implicate[] a legally protected privacy interest."

2  *Khamooshi*, 2025 WL 1408896, at *1, *5; *Carolus*, 2025 WL 1338193 at *1-2.  Courts in other

3  jurisdictions have also recently held that invasion of privacy claims based on use of tracking technologies

4  are insufficient to establish Article III standing.  *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at

5  *5 (S.D.N.Y. Feb. 13, 2025) ("[U]sers have no reasonable expectation of privacy in [an] IP address")

6  (citation omitted); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) (IP address

7  and device identifier information such as device and browser type does not bear on "the private life of

8  another").  The allegations and claims here are indistinguishable from those in *Khamooshi* and *Carolus*

9  and, as in those cases, the Court should dismiss this case for lack of Article III standing.

10  **B.      Motion to Dismiss for Lack of Personal Jurisdiction**

11  Plaintiffs have also failed to allege facts establishing the Court's personal jurisdiction over

12  Gannett in California.  There are two potential bases for personal jurisdiction over non-resident

13  defendants: (1) "'general jurisdiction,' which arises where defendant's activities in the forum state are

14  sufficiently 'substantial' or 'continuous and systematic' to justify the exercise of jurisdiction over him

15  in all matters; and (2) 'specific jurisdiction,' which arises when a defendant's contacts with the forum

16  give rise to the claim in question."  *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 861-62 (S.D. Cal.

17  2023).  The Complaint does not sufficiently allege Gannett is subject to either.

18  **1.      Plaintiffs Fail to Establish General Jurisdiction**

19  Gannett is not subject to general jurisdiction in California.  When evaluating whether a court has

20  general jurisdiction over a foreign corporate defendant, the question is "not whether a foreign

21  corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether

22  that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it]

23  essentially at home in the forum State.'"  *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation

24  omitted).  Here, there is no question that Gannett is not "at home" in California:  Plaintiffs themselves

25  allege that "Gannett Co., Inc. is a corporation organized under the laws of the State of Delaware with its

26  headquarters and principal place of business in New York, New York."  Compl. ¶ 14; *see also Daimler*

27  *AG*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of

28  business are paradigm bases for general jurisdiction") (cleaned up).  Plaintiffs' allegations in the

Complaint concerning Gannett's local California office and workforce, and its digital marketing services company LocaliQ which is headquartered in California, cannot remedy this deficiency, as Plaintiffs make no allegations as to how those operations are "continuous and systematic" enough to render Gannett at home in California.  Compl. ¶¶ 20-21; *see also Daimler AG*, 571 U.S. at 137–39.

Plaintiffs also name "eight daily publications in California" and argue that their conduct subjects Gannett to personal jurisdiction in California.  Compl. ¶ 16.  But these newspapers are owned and operated by indirect and separate and legally distinct subsidiaries, none of which are California companies headquartered in California.  *See* Sack Decl. ¶ 7.  The Ninth Circuit has held that "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) ("[A] foreign parent corporation cannot be subject to general jurisdiction based solely on an agency relationship through its subsidiary's contacts with the forum."); *Daimler AG*, 571 U.S. at 123 (finding defendant was not subject to general jurisdiction in California where defendant's indirect subsidiary had "multiple California-based facilities, including a regional office in Costa Mesa, a Vehicle Preparation Center in Carson, and a Classic Center in Irvine.").  Plaintiffs have not alleged facts sufficient to impute the alleged contacts of Gannett's indirect subsidiaries to Gannett for personal jurisdiction purposes.  *See Ranza*, 793 F.3d at 1071 (holding that to impute the contacts between a parent and subsidiary for personal jurisdiction purposes, the plaintiff must establish an alter ego relationship).

## 2.      Plaintiffs Fail to Establish Specific Jurisdiction

Plaintiffs have also failed to allege facts establishing that this Court may exercise specific personal jurisdiction over Gannett.  When assessing personal jurisdiction, the Ninth Circuit uses the "minimum contacts" test, which requires that: "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *See Pebble Beach Co.*, 453 F.3d at 1155 (citation omitted).  When a defendant moves to dismiss for lack of jurisdiction, the burden is on the plaintiff to establish minimum sufficient contacts under the first two prongs of the test. *Id.*

1

### a.    Plaintiffs Do Not Establish Purposeful Availment

2     Plaintiffs have not alleged facts establishing purposeful availment.[3]    As Gannett argued

3 previously, "[f]or claims sounding in tort," the court applies "a 'purposeful direction' test and look[s] to

4 evidence that the defendant has directed his actions at the forum state, even if those actions took place

5 elsewhere." *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).  California has further adopted

6 the "effects" test for purposeful direction, whereby a defendant is only subject to specific jurisdiction if

7 it "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

8 defendant knows is likely to be suffered in the forum state." *Id.* at 1213-14.  This test also requires

9 "something more" than a foreseeable effect in the forum state.  *See Pebble Beach Co*., 453 F.3d at 1156.

10     Plaintiffs' allegations are insufficient to establish specific jurisdiction.  As explained above, the

11 allegation as to the "eight daily publications in California" is insufficient to impute the purported contacts

12 of Gannett's indirect subsidiaries with California to Gannett for personal jurisdiction purposes.  Compl.

13 ¶¶ 2, 16; *Ranza*, 793 F.3d at 1075 ("Nike's involvement in NEON, though substantial, is insufficient to

14 negate the formal separation between the two entities such that they are functionally one single

15 enterprise.").    As for Plaintiffs' allegations that Gannett maintains offices, staff, and operations in

16 California, including through local production facilities or the LocaliQ brand, these too are insufficient,

17 because Plaintiffs have not and cannot explain how these relate to the conduct alleged in the Complaint.

18 Compl. ¶¶ 26-27; *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018) (holding that similar

19 allegations "are wholly unrelated to the present litigation and cannot give rise to specific jurisdiction.");

20 *Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*, 2021 WL 3053201, at *6 (N.D. Cal. July 20, 2021)

21 ("Whether a court has specific personal jurisdiction over a nonresident defendant 'focuses on the

22 relationship among the defendant, the forum, and the litigation,' and 'the defendant's suit-related conduct

23 must create a substantial connection with the forum.'").[4]   Indeed, when there is no connection between

24 _____

[3] Because Plaintiffs failed to satisfy the first prong of the Ninth Circuit test, there is no personal
25 jurisdiction and Gannett need not address the subsequent prongs.  That said, Plaintiffs also fail to satisfy
the second and third prongs.  Plaintiffs' claims do not arise out of or relate to Gannett's conduct in
26 California.  Instead, they relate to the alleged use of technologies Gannett implemented outside of
California.  *See* Sack Decl. ¶ 7 (explaining Gannett "operates the USA Today website" out of its New
27 York offices).  Further, it would be unreasonable for Gannett to be subject to personal jurisdiction in this
district given the lack of a connection to California.

28 [4] Cases where courts have found specific jurisdiction by virtue of an office or activity in the forum are
distinguishable, as those cases involve facts where those contacts with forum state are integral to the

1    the defendant's suit-related conduct and the forum, "specific jurisdiction is lacking *regardless of the*

2    *extent of a defendant's unconnected activities in the State.*"  *See id.* (quoting *Bristol-Meyers Squibb Co.*

3    *v. Superior Ct.*, 582 U.S. 255, 264 (2017) (emphasis added).

4         Plaintiffs' allegation that Gannett "is registered with the California Secretary of State," and their

5    allegation that Gannett has a "agent for service of process in California" are similarly deficient.  Compl.

6    ¶ 15; *see Parnell Pharms., Inc. v. Parnell, Inc.*, 2015 WL 5728396, at *4 (N.D. Cal. Sept. 30, 2015)

7    (finding registering with the California Secretary of State and designating an agent for service of process

8    were insufficient for establishing specific personal jurisdiction, noting "[r]egistering with the Secretary

9    of State is a passive act that is not expressly aimed at California and causes harm that [defendant] knows

10   is likely to be suffered in California.").

11        To attempt to establish purposeful direction, Plaintiffs allege that Gannett is subject to personal

12   jurisdiction because it "caus[ed] a digital transmission to enter California . . . by knowingly installing

13   tracking software on unsuspecting Californians' browsers[.]"  Compl. ¶ 28.  Therefore, Plaintiffs reason,

14   Gannett "target[ed] its wrongful conduct at website consumers [and] expressly aimed its conduct at

15   California."  *Id.* ¶ 29.  However, these new allegations are insufficient to support Plaintiffs' claim that

16   Gannett specifically targeted California.  The USA Today website is accessible to consumers worldwide,

17   not just California residents, which is fatal to Plaintiffs' argument.  *See Fregosa v. Mashable, Inc.*, 2025

18   WL 1083214, at *4 (N.D. Cal. Apr. 10, 2025) (dismissing CIPA claim on personal jurisdiction grounds

19   because plaintiff "fails to allege facts establishing that Mashable targeted California as a forum state,

20   and not merely website users who may or may not have been California residents."); *Heiting v. Marriott*

21   *Int'l, Inc.,* 743 F. Supp. 3d 1163, 1171 (C.D. Cal. 2024) (dismissing CIPA claim on personal jurisdiction

22   grounds because plaintiff "offer[ed] no facts to . . . distinguish California from any other state.");

23   *Mikulsky*, 682 F. Supp. 3d at 867-68 (dismissing CIPA claim for lack of personal jurisdiction where

24   there were "no allegations showing that the Website specifically targets Californians.").

25        The Ninth Circuit's recent decision in *Briskin v. Shopify, Inc.,* 135 F.4th 739 (9th Cir. 2025) does

26

27   dispute.  *See, e.g.*, *Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2006 WL 3290416,
     at *5 (N.D. Cal. Nov. 13, 2006) (finding personal jurisdiction where there was "prima facie evidence
28   that [defendant] maintains an office in the forum that it uses as part of its effort to market its products,
     including the allegedly infringing product").

1    not compel a different conclusion.  There, Shopify conceded it used "geolocation technology" which

2    collected website visitors' geolocation information *before* cookies were installed on their devices during

3    the checkout process.  *Id.* at 745-46.  The Ninth Circuit held that Shopify had expressly aimed its conduct

4    at California because when it installed the cookies, it knew some visitors were located in California.  *Id.*

5    at 755-56.  Not so here.  Plaintiffs allege Gannett installs cookies on website visitors' browsers upon

6    first accessing and entering the USA Today website.  Compl. ¶ 62.  However, they do not allege facts

7    suggesting that, like Shopify, Gannett had any way to know the geolocation of usatoday.com visitors

8    prior installing the cookies on their first visit.  Without such facts, Gannett's contacts with California

9    are, at best, "random, isolated, or fortuitous" results of their operation of a publicly accessible website,

10   which is insufficient to confer personal jurisdiction.  *See Briskin*, 135 F.4th at 758.

11          Moreover, when evaluating whether a website operator is subject to personal jurisdiction, Ninth

12   Circuit courts apply a "sliding scale" test.  *See Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4

13   (E.D. Cal. May 26, 2021).  Specifically, "the Court determines jurisdiction by examining the 'level of

14   interactivity and commercial nature of the exchange . . . that occurs on the Web site.'"  *Id.* (quoting

15   *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011)).  Plaintiffs allege that the

16   USA Today website includes a "chat function and a toll-free number for Californians" to contact Gannett

17   about local news stories, but do not show how these functions make the USA Today website sufficiently

18   interactive to establish specific jurisdiction under the sliding scale test.  Compl. ¶ 23; *Massie*, 2021 WL

19   2142728, at *4 (granting motion to dismiss CIPA claim because "passive sites where a defendant has

20   simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions"

21   are not interactive enough to establish personal jurisdiction) (internal quotation marks omitted).

22          Because Plaintiffs have not established general or specific personal jurisdiction, this lawsuit

23   cannot proceed in California, and the Court should dismiss the Complaint pursuant to Rule 12(b)(2).

24          **C.     Motion to Dismiss for Failure to State a Claim**

25                 **1.     Plaintiffs Fail to Plausibly Allege a Violation of the CDAFA**

26          Plaintiffs fail to state a CDAFA claim for two reasons: (1) Plaintiffs have not sufficiently alleged

27   that Gannett acted to circumvent technological barriers; and (2) Plaintiffs have not included any

28   allegations to demonstrate damage or loss to establish statutory standing under the CDAFA.

1

2

### a.     Plaintiffs Fail to Plead that Gannett Acted to Circumvent Technological Barriers

The "[CDAFA] is an anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). Accordingly, each provision of CDAFA under which Plaintiffs purport to bring their claims requires that Gannett have acted "without permission." *See* Compl. ¶¶ 123-127, 132 (purporting to bring claims under Cal. Pen. Code §§ 502(c)(1-2), (c)(4), (c)(6-8)). Consistent with the CDAFA's anti-hacking intent, courts interpreting this language have done so narrowly, requiring that plaintiffs allege that defendants "circumvented technological barriers put into place to block access by the defendant." *Custom Packaging Supply*, 2015 WL 8334793, at *3; *Rodriguez v. Google LLC*, 2024 U.S. Dist. LEXIS 63161, at *15 (N.D. Cal. Apr. 5, 2024) (describing the interpretation of courts within this District); *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *4 (C.D. Cal. Oct. 27, 2023) (dismissing CDAFA claim with prejudice and finding "[a]lthough the CDAFA does not define the term 'without permission,' district courts have interpreted the term to require the defendant to act 'in a manner that overcomes technical or code-based barriers.'").

Plaintiffs have alleged no new facts demonstrating that Gannett acted to circumvent any technological barriers, let alone with the requisite specificity under Federal Rule of Civil Procedure 9(b). Indeed, "because Plaintiffs' CDAFA claim" that Gannett failed to disclose the alleged collection and sharing of data "'sound[s] in fraud,' it is subject to Rule 9(b) pleading standards." *Nowak v. XAPO, Inc.*, 2020 U.S. Dist. LEXIS 219575, at *13 (N.D. Cal. Nov. 20, 2020). But Plaintiffs' allegations do not "include the 'who, what, when, where, and how'" as to the circumvention of any technological barriers. *Id*. at *8. Plaintiffs have at most asserted that certain cookies were placed on their browsers and that those cookies collected information, not that Gannett's conduct involved "'hacking' or breaking into a computer." *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007); *e.g.*, Compl. ¶ 38. [5]

---

[5] Cases such as *In re Carrier IQ, Inc., Consumer Privacy Litigation*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) and *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056 (N.D. Cal. 2018) do not compel a different conclusion, as both cases involved software that was "deeply hidden" in code installed by a plaintiff, such that it would "render any 'technical or code based' barrier implemented by the Plaintiffs ineffective." *In re Carrier*, 78 F. Supp. 3d at 1101. That Plaintiffs allege the trackers were not disclosed to users, Compl. ¶ 4, is of no concern because many web browsers and devices allow users to block the sort of cookies Plaintiff asserts were installed, even if not disclosed to the user, and some do so by default. *See, e.g., Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023)

To overcome this deficiency, the Complaint relies on a new theory that Gannett introduced a "computer contaminant" onto Plaintiffs' devices.  Compl. ¶¶ 132-35; Cal. Pen. Code § 502(c)(8). CDAFA defines "computer contaminants" as "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information."  Cal. Pen. Code § 502(b)(12).  However, § 502(c)(8) does not apply to cookies or third-party tracking technologies when the alleged transmission is caused by "standard web browser function" that does not "usurp" a device's "normal operation[s]."  *In re Facebook Priv. Litig.*, 2011 WL 6176208, at *4 (N.D. Cal. Nov. 22, 2011), *rev'd in part on other grounds*, 572 F. App'x 494 (9th Cir. 2014).  Plaintiffs admit the transmission of IP addresses or device/browser metadata are "essential" to the internet's operation, and that sending such information to the website server helps "ensure that a website is displaying content correctly and operating appropriately."  Compl. ¶¶ 46, 50; *Forrester*, 512 F.3d at 510; *Auernheimer*, 748 F.3d at 530. As such, the technologies here are not computer contaminants, and Plaintiffs fail to plead with specificity any technological barriers put into place to block Gannett's access, or Gannett's circumvention of such barriers, as required under Rule 9(b).

### b.    Plaintiffs Lack Statutory Standing to Bring a CDAFA Claim

Plaintiffs also offer no allegations "showing [] economic harm or loss" as is required for standing to assert a CDAFA claim.  *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Indeed, only an individual who has "suffer[ed] damage or loss by reason of a violation" of the statute may bring a civil action "for compensatory damages and injunctive relief or other equitable relief."  Cal. Pen. Code § 502(e)(1).  Courts have held that the loss of the right to control or protect data or loss of the value of personal data is not the type of loss protected by the CDAFA.  *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) ("Plaintiffs' personal information does not constitute property" for CDAFA standing purposes); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (finding unpersuasive the argument that "the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, as discussed above, is 'damage

---

(plaintiff sufficiently alleged circumvention of "technical or code-based barriers" where he alleged the defendant circumvented Apple's iPhone settings "which allow[] an iPhone user to turn off tracking").

1    or loss' within the meaning of the CDAFA"); *Doe v. Meta Platforms, Inc.,* 690 F. Supp. 3d 1064, 1082

2    (N.D. Cal. 2023) (dismissing CDAFA claim for use of Meta Pixel because *Cottle* precluded plaintiffs'

3    argument that their "protected information is diminished in value" and plaintiffs provided "no support"

4    for their alternative "argument that an 'inability' to use their computer devices to communicate with their

5    healthcare providers in the future is a cognizable form of loss or damage actionable under the CDAFA").

6            The Complaint does not establish that Plaintiffs suffered any cognizable damage or loss based

7    on the purported installation of cookies on their web browser.  Instead, Plaintiffs offer only a conclusory

8    allegation that they "suffered economic loss and damages" and are accordingly "entitled to compensatory

9    damages."  Compl. ¶ 140.  This is insufficient.  *See, e.g.*, *Williams*, 384 F. Supp. 3d at 1049-50

10   (dismissing CDAFA claim where plaintiff pleaded "only conclusory claims of a deprivation of income

11   and an invasion of privacy without identifying injury to the plaintiffs themselves."); *Smith v. Rack Room*

12   *Shoes, Inc.*, 2025 WL 1085169, at *6 (N.D. Cal. Apr. 4, 2025) (similar).[6]  Plaintiffs thus lack statutory

13   standing to bring their CDAFA claims, and the Court should dismiss the claims for this reason as well.

14           **2.      Plaintiffs Fail to Plausibly Allege a Violation of CIPA**

15           Plaintiffs have failed to plausibly allege a violation of CIPA because: (1) Plaintiffs have failed to

16   establish standing to assert a private cause of action under CIPA; (2) the trackers do not function as pen

17   register or trap and trace devices; and (3) Gannett is permitted to use a pen register or trap and trace

18   device to operate and maintain its electronic communication service.

19           **a.      Plaintiffs Lack Statutory Standing to Bring a Private Cause of Action**
20           **Under CIPA**

21           Plaintiffs' § 638.51 claim fails because their allegations fall outside the zone of interests protected

22   by the statute.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citations

23   omitted).  Separate and apart from Article III standing, a plaintiff only has standing to bring a private

24   cause of action under CIPA if they "ha[ve] been *injured* by a violation of" the statute.  Cal. Pen. Code §

---

25   [6] Plaintiffs' reliance on *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) is misguided.
26   There, the Court ruled plaintiffs suffered economic damages due to Google's collection and sale of their
     browsing history turned because Google had a program giving users the option to sell their browsing
27   history data.  Here, Plaintiffs do not allege Gannett operates a program whereby users can sell their
     information, making *Brown* inapposite.  *See also Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at
28   *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim for lack of statutory standing because plaintiffs
     failed to allege with specificity how the value of their data decreased as a result of defendant's conduct).

637.2 (emphasis added).  The sole basis for Plaintiffs' alleged injury is the collection of IP addresses and Device Metadata associated with the devices that they used to access the Website.  But this is insufficient to confer statutory standing, because (1) Plaintiffs have no legally protected interest in such information, and (2) Plaintiffs have failed to plead sufficient facts to demonstrate any injury under CIPA.

California state courts[7] routinely dismiss cases involving CIPA pen register claims because individuals do not have a legally protected interest in IP addresses or device metadata, which are transmitted as part of the routine operation of the internet.  *See* Compl. ¶¶ 46, 50; *People v. Stipo*, 195 Cal. App. 4th 664, 666 (2011) ("A subscriber has no expectation of privacy in the subscriber information he supplies to his Internet provider."); Ex. A, Minute Order at 7, *Palacios v. Fandom, Inc.,* No. 24STCV11264 (Cal. Super. Ct. Mar. 27, 2025) ("it is normal for websites to learn the IP addresses of their visitors"); *Sanchez v. Cars.com*, 2025 WL 487194, at *4 (Cal. Super. Ct. Jan. 27, 2025) ("Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.") (quoting *Forrester*, 512 F.3d at 503); *Aviles v. LiveRamp. Inc.*, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025) ("The problem with this argument is that it is normal for websites to track the IP addresses of their visitors . . . Plaintiff has not alleged anything above and beyond how the internet normally works."), *adopted as final ruling*, 2025 WL 487199 (Jan. 28, 2025).[8]

California state courts have declined to expand § 638.51 to encompass collection of the information transmitted here.  "Public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby

---

[7] Given Plaintiffs' CIPA claim presents a question of state law, the Court should look to state court decisions dismissing similar CIPA pen register claims rather than federal court decisions to the contrary in attempting to predict how the California Supreme Court might decide the issue.  *See infra* § IV.C.2.b; *Steinle v. City & County of San Francisco*, 230 F. Supp. 3d 994, 1014 n.8 (N.D. Cal. 2017) ("Federal district courts confronted with questions of state law must follow precedent set by the state's highest court or . . . predict how that court would decide the issue. . . . Holdings of lower state courts are often persuasive authority in conducting the latter inquiry."), *aff'd*, 919 F.3d 1154 (9th Cir. 2019).

[8] To be sure, while two recent CIPA cases in the Northern District of California found that the plaintiffs had standing under CIPA, neither directly addressed the arguments by the parties or the growing body of cases finding no legally protected interest in IP addresses for purposes of determining statutory standing.  *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. Oct. 2024); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024).

1   providing an IP address for purposes of connecting the website, as a violator." *Licea v. Hickory Farms*

2   *LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). The *Licea* court further reasoned "[s]uch

3   a broad based interpretation would potentially disrupt a large swath of internet commerce without further

4   refinement as the precise basis of liability, which the court declines to consider." *Id.*

5       Further distancing plaintiff's allegations from the zone of interest protected by CIPA is that the

6   alleged harm flows from third-party platforms and *not* the defendant website operator. On this score,

7   *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) and its progeny cannot salvage

8   Plaintiffs' claim. Courts have already found *Greenley* "unpersuasive" in determining whether a

9   defendant website can be subject to liability under § 638.51, as *Greenley* analyzed this issue only in

10  relation to "a data broker that provided software to application developers in return for which it

11  surreptitiously intercepted location data from application users[,]" rather than, as here, the operator of

12  the website that Plaintiff allegedly visited. *See* Ex. B, Minute Order at 3, *Casillas v. Transitions Optical*

13  *Inc.*, No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. Apr. 23, 2024). *Greenley* also analyzed whether

14  the plaintiff there had Article III standing, and not whether the plaintiff had statutory standing.[9] 684 F.

15  Supp. 3d at 1036. Indeed, in *Rodriguez v. Fountain9*, a California Superior Court recently dismissed a

16  § 638.51 claim that was—as here—directed toward the website operator, as opposed to the technology

17  provider, because the collection of an IP address is too "abstract and hypothetical" to confer *statutory*

18  standing. *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *4 (Cal. Super. Ct. L.A. Cnty. July 9,

19  2024) ("Plaintiff alleges Defendant's non-party software developer, *not* Defendant, packages and sells

20  the information alleged in the FAC to third parties for advertising and marketing purposes.").

21       Later cases based on *Greenley* are similarly unavailing. *Moody v. C2 Educational Systems, Inc.*

22  is inapposite here, as while the Central District of California found that defendant's data collection there

23  was sufficient to confer plaintiffs statutory standing, the operative allegations involved "a process

24  through which the site collects data . . . and matches that data with [a] database to uncover . . . visitors'

25  identities"—technology that is markedly different from those allegedly used by Gannett. 742 F. Supp.

26

---

27  [9] Federal courts are also split on whether plaintiffs have Article III standing in such circumstances. *See*
*supra* at IV.A; *see also Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1189 (N.D. Cal. 2020) (holding

28  that plaintiffs had no Article III standing because they "do not plausibly allege anything more than the
collection of IP addresses, and there is no legally protected privacy interest in IP addresses.")

1    3d 1072, 1074 (C.D. Cal. 2024).  Further, *Mirmalek* and *Lesh v. Cable News Network, Inc.* are also

2    inapposite because neither directly addresses the growing trend of California state case law underpinning

3    Gannett's argument as to plaintiffs' lack of a legally protected interest in their IP address or other

4    information.  2024 WL 5102709 at *4; 767 F.Supp.3d 33, 39-40 (S.D.N.Y. Feb. 20, 2025).

5       But even if Plaintiffs could demonstrate that the information allegedly collected here falls within

6    the zone of interests protected by CIPA, they have failed to plead facts to establish that they were injured

7    and have standing for their claims.  Plaintiffs allege that they were "pervasively" tracked "across the

8    internet[,]" and that the technologies to which the complaint points caused "additional data points to be

9    sent from users' browsers to . . . third parties." Compl. ¶ 38.  However, courts have held that such

10   allegations are "abstract and hypothetical because it is solely premised on statutory damages under

11   CIPA[,]" and are insufficient to demonstrate a concrete injury that can confer statutory standing.

12   *Rodriguez*, 2024 WL 3886811, at *4.

13      For these reasons, Plaintiffs' CIPA claim should be dismissed for lack of statutory standing.

14       **b.**  **The Trackers Do Not Constitute A Pen Register or Trap and Trace**
15          **Device**

16      "Pen registers" have a simple function—they reveal that person A makes an outgoing call to

17   person B.  Conversely, "trap and trace" devices reveal that person A receives an incoming call from

18   person B.  These functions are illustrated below:



Unsurprisingly, the California Legislature has recognized that such devices "are extremely useful for law enforcement." *See* Bill Analysis, Assemb. B. 929, Reg. Sess., at pgs. S, T (Cal. July 8, 2015), https://tinyurl.com/39jcb5np. Thus, balanced against the privacy interests of Californians, the legislature enacted CIPA § 638.51 to enable "law enforcement to track which people in an investigation are communicating with one another." *Id.* at pgs. T–U. The state-law framework now allows for use of a pen register or trap and trace device via court order or under certain exceptions. *See* CIPA § 638.51.[10] But as to plaintiff's maze of allegations, the Court need not even consider whether a pen register or trap and trace device was lawfully used because there is no pen register or trap and trace device at issue here.

Beyond the plain text, "to effectuate the purpose of the statute," "the court's fundamental task is to ascertain legislative intent." *Sanchez v. Cars.com Inc.*, No.24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025). As California courts have explained, the Legislature started from the premise that "law enforcement by definition knows who the subject [of their investigation] is." Ex. C, Order re Demurrer and Motion to Strike at 3, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025). Put differently, pen register and trap and trace devices are not used to identify or obtain information about the person on whom the device is deployed—they are used to track *who else* that person is communicating with. *Id.* Plaintiffs' Complaint fails on this score for several reasons:

To begin, in Plaintiffs' words, the alleged use of the Trackers at issue here involves collecting and sharing "personally identifying and addressing information" of Plaintiffs, not their communications with *third parties*. *See, e.g.*, Compl. ¶ 76. Putting aside that Gannett cannot and does not use the information allegedly collected—*i.e.*, browser and device/operating system data, IP addresses, and cookie values (Compl. ¶ 60)—to identify Plaintiffs (*i.e.*, Person A),[11] as shown below, Plaintiffs' claim

---

[10] The California Legislature has recognized the need to "[s]top[] the abusive lawsuits . . . for standard online business activities that are already regulated by the [CCPA]." *See* https://sd14.senate.ca.gov/news/press-release/senator-anna-m-caballero-unveils-bold-legislative-package-2025. Indeed, the California Senate introduced a bill to amend CIPA to include a "commercial business purpose" exemption. In June, this legislation passed unanimously in the Senate. Should it pass in the Assembly, it could be signed into law by October. The bill's support reflects recognition that CIPA is not intended to reach the regularly-used ad tech at issue here.

[11] California courts have recognized that IP addresses and related device information, are not "unique fingerprinting" sufficient to identify a person, and is certainly not the type of "information normally within the domain of law enforcement officers with a warrant." *Licea*, 2024 WL 1698147, at *3.

does not map onto the operation of either a traditional pen register or trap and trace device:



On this basis alone, where "the allegations are not that Defendants were trying to learn who Plaintiff was communicating with," California state courts have dismissed CIPA § 638.51 pen register claims.  *See* Ex. C, *Camacho* at 3-4 (dismissing the CIPA § 638.51 claim where plaintiff alleged defendants sought to identify "*[p]laintiff's* IP address and other undefined '*personal* information.'") (emphasis added)); Ex. A, *Palacios* at 7 (same); *Aviles*, 2025 WL 487196, at *2 (same).

Recent case law has similarly held that where, as here, the alleged tracking does not allow monitoring of who else contacts Plaintiff, the tracking also does not amount to the operation of a trap and trace device.  Indeed, in *Palacios*, the court recognized "the trap and trace device statute is related to the surreptitious monitoring of *incoming* communications[,]" which would "make it analogous to the law enforcement tool that allows law enforcement to record what numbers have called a specific phone line."  Ex. A, *Palacios* at 7 (emphasis added).  But here, the Complaint does not claim the alleged tracking involves monitoring of incoming communications to the Plaintiffs, and as in *Palacios*, the court should therefore find the alleged conduct does not amount to the operation of a trap and trace device.[12]

---

[12] The Lesh court's holding that IP addresses fall within the statute's scope does not establish otherwise. That finding was only responsive to CNN's contention that § 638.51 strictly applies to telephone

1    Even if one were to consider Plaintiffs' claim through the perspective of visits to

2 USAToday.com—as opposed to communications made by or to the plaintiffs (as "person A")—this too

3 would not establish that Gannett operated or installed a pen register or trap and trace device.  As indicated

4 above, pen register and trap and trace devices identify "what third parties the subject is communicating

5 with."  Ex. C, *Camacho* at 3; *see also* Bill Analysis, Assemb. B. 929, Reg. Sess., at pg. T–U (Cal. July

6 8, 2015), https://tinyurl.com/39jcb5np (emphasis added) (explaining that these devices are designed to

7 track which "*people* . . . are communicating with one another and at what times.").  But Plaintiffs do not

8 and cannot plausibly allege that IP addresses, device identifiers, and cookie values enabled Gannett—as

9 the "subject" in this example—to identify its website visitors, who would be the "third parties" in this

10 situation.  Compl. ¶ 60.  Indeed, "[m]ost consumer IP addresses are 'dynamic' as opposed to 'static[,]'"

11 meaning they change frequently and "may be re-assigned to many different computers in a short period

12 of time."  *Crim. Prods., Inc. v. Doe*, 2016 WL 6581850, at *2 n.1 (S.D. Cal. Nov. 7, 2016).

13    Moreover, viewing Plaintiffs' claim through the lens of all visits to USAToday.com is in tension

14 with their own allegations, which center themselves—not Gannett—as the alleged "privacy victim" in

15 this case.  Ex. A, *Palacios* at 8.  Furthermore, viewing the matter through the perspective of all visits to

16 USAToday.com boils down to the claim that Gannett was surveilling its *own* communications,

17 notwithstanding that the case law has rejected the notion that a party can improperly surveil itself.  Ex.

18 C, *Camacho* at 3 ("The statute does not prohibit a defendant from collecting identifying information

19 about who the defendant is communicating with[.]").

20    Lastly, to the extent Plaintiffs assert that the third parties named in the Complaint track his

21 activity across "other websites[,]" that is irrelevant to the claim against Gannett here.  *See, e.g.*, Compl.

22 ¶ 72.  Indeed, California courts have rejected this argument: "downstream use of data is not a part of the

23 definitions of pen registers or trap and trace devices."  *Aviles*, 2025 WL 487196, at *3 ("It is the method

24 of data collection itself that is at issue.").  Further still—Plaintiffs suggest that it is the third parties—not

25

26 communications, not the argument raised here—and embraced by more recent cases—that the tracking
   at issue does not identify who Plaintiffs communicate with.  767 F. Supp. 3d at 40-42.  Moreover, the
27 court did not acknowledge case law indicating that IP addresses are disclosed as part of normal internet
   operations, or that IP addresses can be dynamic and change frequently in rejecting CNN's Fourth
28 Amendment cases to find a privacy interest in IP addresses.  *Licea*, 2024 WL 1698147, at *4; *Crim.*
   *Prods.*, 2016 WL 6581850, at *2 n.1.

1   Gannett—who are able to monitor individuals' visits to other websites.  Compl. ¶¶ 67, 72, 75.  For these

2   reasons, Gannett does not use or install "pen registers" or "trap and trace" devices within the meaning

3   of California law, and on this basis alone, Plaintiffs' § 638.51 claim fails.[13]

4
        c.      **Gannett May Use a Pen Register or Trap and Trace Device to Operate**
5               **and Maintain its Service**

6           Even if the Court were to find that Gannett used a pen register or trap and trace device—which

7   it did not—CIPA permits their use.  As a "provider of electronic or wire communication service,"

8   Gannett may use either such device "[t]o operate, maintain, and test a wire or electronic communication

9   service."  CIPA § 638.51(b)(1).  Gannett meets the broad definition of "electronic communication," *id.*

10  § 629.51, which encompasses "any transfer of signs, signals, writings, images, sounds, data, or

11  intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-

12  optical system[.]"  Under this definition, Gannett operates and maintains an electronic communication

13  service that operates by wire, as Plaintiffs allege that Gannett uses the USA Today website to "provide[]

14  breaking news and coverage of U.S. and national news."  Compl. ¶ 3; Ex. D, Minute Order at 4, *Casillas*

15  *v. BOP LLC*, No. 24STCV15581 (Cal. Super. Ct. June 18, 2025) (concluding defendant's clothing,

16  shoes, and jewelry website qualified as an "electronic communication service" "[g]iven the breadth of

17  the statutory definition[.]").  For the website to properly function, Gannett *must* collect IP addresses and

18  device metadata so that site information can be properly transmitted to visitors.  *See* Compl. ¶¶ 46, 50.

19          Notwithstanding the technological nuances at issue, California courts recognize that the

20  argument here is straightforward given the "collection of an IP address is a normal component of

21  accessing a website such that there can be no liability here."  *See* Ex. E, Order at 3, *Rodriguez v. First*

22  *Am Fin. Corp.*, No. 24STCV05383 (Cal. Super. Ct. Apr. 30, 2025).  Other courts have found the same.

23  Ex. A, *Palacios* at 7 (dismissing § 638.51 claim and noting "it is normal for websites to learn the IP

24  addresses of their visitors[.]"); Ex. C, *Camacho* at 3 ("[W]hen a person goes on a website . . ., the website

25

26  [13] California federal decisions allowing § 638.51 claims to proceed past motions to dismiss do not
27  establish otherwise, because as in *Lesh*, the courts there did not address the arguments that Gannett raises
    above that the alleged tracking does not reflect collection of the identity of who the target communicates
28  with.  *See, e.g., Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, at *16-18 (C.D. Cal.
    Apr. 3, 2025); *Mirmalek*, 2024 WL 5102709, at *3-5.

1  needs to know who that person is.").  Independent of the court's findings on the antecedent questions of

2  CIPA liability, Gannett's conduct is nevertheless exempted from the law's reach.

3              **3.      Plaintiffs Fail to Plausibly Allege a Violation of the California Constitution**

4          Plaintiffs fail to state a privacy claim under the California Constitution.  To do so, a plaintiff must

5  allege facts establishing: "(1) a legally protected privacy interest; (2) a reasonable expectation of

6  privacy[;]" and (3) "a serious invasion of privacy.  *Hill v. NCAA*, 7 Cal. 4th 1, 66 (1994).  Plaintiffs fail

7  to satisfy this test, and the Court should dismiss their constitutional privacy claim.

8          *First*, as explained above, Plaintiffs lack a legally protected privacy interest in the information

9  to which the Complaint points.  *E.g.*, *Forrester*, 512 F.3d at 503.  Plaintiffs also fail to demonstrate they

10 had a legally protected privacy interest given their claims are based on only having "accessed and viewed

11 the USA Today website."  Compl. ¶¶ 97-98; *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *4 (N.D.

12 Cal. Dec. 23, 2024) ("[D]isclosure of IP addresses and geolocation data is not sufficiently 'egregious' to

13 support an invasion of privacy claim."); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal.

14 2024) (capturing "'personal details' and 'browsing history,' . . . and IP address, . . . is insufficient to

15 demonstrate . . . a serious invasion of a protected privacy interest."); *Yoon v. Lululemon USA, Inc.*, 549

16 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021) ("[C]ourts have been less willing to find that users have a

17 cognizable privacy interest in browsing data collected only while users interact with the website of the

18 defendant[.]").  Moreover, Plaintiffs' failure to plausibly allege that Gannett violated CIPA further

19 demonstrates that they have no legally protected interest under the California Constitution.  *See Williams*

20 *v. What If Holdings, LLC*, 2022 WL 17869275, at *5 (N.D. Cal. Dec. 22, 2022) (dismissing both CIPA

21 wiretapping claim and constitutional invasion of privacy claim, and explaining "[b]ecause plaintiff did

22 not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest

23 under the California Constitution.").  They thus fail the first prong of the test set forth in *Hill*.

24         *Second*, Plaintiffs allege no facts establishing a reasonable expectation of privacy in the

25 information at issue, which is conveyed to websites as part of the normal operation of the internet.  *United*

26 *States v. Heckenkamp*, 482 F.3d 1142, 1144 n.1 (9th Cir. 2007) ("An IP address is a standard way of

27 identifying a computer that is connected to the Internet."); *United States v. Acevedo-Lemus*, 2016 WL

28

1  4208436, at *4 (C.D. Cal. Aug. 8, 2016) (no reasonable expectation of privacy in defendant's IP address

2  because he routinely disclosed it to third parties and websites he visited on the open Internet), *aff'd*, 800

3  F. App'x 571 (9th Cir. 2020).[14]  Thus, Plaintiffs fail the second prong of the *Hill* test as well.

4  And ***third***, Plaintiffs have not alleged facts establishing a serious invasion of privacy. Indeed,

5  Gannett's alleged conduct at most constitutes "routine commercial behavior."  *Low v. LinkedIn Corp.*,

6  900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("[D]isclosure of personal information, including social

7  security numbers, does not constitute an 'egregious breach of the social norms'"); *In re Google, Inc.*

8  *Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973-74, 988 (N.D. Cal. 2014) (disclosure of browsing histories

9  was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1050, 1063 (N.D. Cal.

10  2012) (no invasion of privacy based on disclosure of addresses, geolocation, device identifier, gender,

11  age, time zone, and app use).  In *Fogelstrom v. Lamps Plus, Inc.*, a California appellate court found an

12  alleged invasion of privacy amounted to "routine commercial behavior" where the conduct consisted of

13  "obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons

14  and other advertisements."  195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011).  Here,

15  Plaintiffs have similarly only alleged information was collected without their knowledge and used for

16  advertising purposes.  Compl. ¶ 60.  Plaintiffs have therefore not satisfied the third prong of the *Hill* test.

17  Additionally, even if Plaintiffs sufficiently pled their constitutional invasion of privacy claim,

18  the Court should dismiss the demand for money damages.  Compl. Prayer for Relief; *Clausing v. S.F.*

19  *Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990).  Courts within the Ninth Circuit agree that the

20  California Constitution does not provide for a private right of action for money damages for invasion of

21  privacy. *E.g., Blanco v. County of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015) ("*Clausing* found

22  that article I, section 1 does not permit a private right of action for money damages . . . for an alleged

23  violation of the privacy provision[.]").  Accordingly, at a minimum, the Court should dismiss Plaintiffs'

24  prayer for money damages in connection with their constitutional invasion of privacy claims.

25  **4.    Plaintiffs Fail to State An Unjust Enrichment Claim**

26  Plaintiffs cannot state an unjust enrichment claim because "California does not recognize a

____

[14] Courts' reluctance to find that individuals have a privacy interest in their IP addresses also makes sense given most consumer IP addresses change frequently, as noted previously.  *Crim. Prods.*, 2016 WL 6581850, at *2 n.1.

1    separate cause of action for unjust enrichment[.]"  *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132-34

2    (N.D. Cal. 2020) (dismissing unjust enrichment claim where plaintiffs brought claim based on alleged

3    breaches of defendant's terms of use).  Courts sometimes allow unjust enrichment claims to proceed as

4    "quasi-contract claims seeking restitution."  *Id.*  Plaintiffs, however, have not alleged any new facts to

5    plausibly support an unjust enrichment claim under a quasi-contract theory.  They now allege Gannett

6    was enriched through real-time bidding of digital advertising space, and Gannett's enrichment was at

7    their expense because the tracking technologies caused them to expend resources such as "additional

8    processing, storage, and power usage." Compl. ¶¶ 138-39.  But courts in analogous contexts have

9    considered such injuries to be *de minimis*.  *Olmos v. Bank of Am., N.A.*, 2016 WL 3092194, at *4 (S.D.

10   Cal. June 1, 2016) (loss of device storage, battery life, and bandwidth were insufficient because the loss

11   was *de minimis*) (citing *Hernandez v. Path, Inc.*, 2012 WL 5194120 at *2 (N.D. Cal. Oct. 19, 2012)).  In

12   addition, for a "restitution claim" based on "consumer protection claims" to proceed, Plaintiffs must

13   "plead an actionable misrepresentation or omission."  *In re Apple Processor Litig.*, 2022 WL 2064975,

14   at *12 (N.D. Cal. June 8, 2022), *aff'd*, 2023 WL 5950622 (9th Cir. Sept. 13, 2023).  But Plaintiffs have

15   never pled any causes of action premised on any misrepresentations or omissions.

16        Indeed, Plaintiffs' purported unjust enrichment claim is based entirely on the same conduct as

17   their other claims, and therefore should be dismissed.  *Smith v. Ygrene Energy Fund, Inc.*, 2017 WL

18   3168519, at *12 (N.D. Cal. July 26, 2017) (dismissing unjust enrichment claim "based on the same

19   conduct as the statutory and tort claims through which [plaintiffs] seek[s] relief").  Relatedly, Plaintiffs'

20   claim is equitable in nature, but Plaintiff has not pled the inadequacy of any legal remedy—indeed, they

21   seek compensatory and statutory damages based on their other statutory claims in the Complaint.  Compl.

22   Prayer for Relief; *see Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (plaintiff

23   "must establish that she lacks an adequate remedy at law before securing equitable restitution").  The

24   Court should therefore dismiss Plaintiffs' unjust enrichment claim.

25            **5.      Plaintiff Fails to State A California Unfair Competition Law Claim**

26        Plaintiffs' UCL claim fails because they (1) lack statutory standing under the UCL, and (2) fail

27   to plausibly allege facts showing that Gannett's conduct was "unfair" or "unlawful."  First, the UCL

28   requires "plaintiffs to (1) plead an economic injury and (2) show that the injury was caused by the

1  challenged conduct" to establish statutory standing.  *Ramos v. Gap, Inc.*, 2024 WL 4351868, at *7 (N.D.

2  Cal. Sept. 30, 2024).  Because Plaintiffs' UCL claim is predicated only on the alleged disclosure of their

3  device data, browser/operating system data, and IP addresses, they have failed to plausibly allege

4  economic injury.  *See* Compl. ¶ 175; *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024)

5  (dismissing UCL claim because "loss of personal data is also not sufficient to demonstrate an economic

6  injury"); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) ("[N]o federal

7  court has wedged individual digital data into the UCL's 'money or property' box").  Indeed, Plaintiff

8  has not pled he ever attempted to derive any value from this information.  *Moore v. Centrelake Med.*

9  *Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (no UCL standing where plaintiffs argued their "PII was

10  stolen and disseminated, and that a market for it existed," without arguing they "attempted or intended

11  to participate in this market, or otherwise to derive economic value from their PII.").[15]

12      Second, the UCL prohibits "unlawful" or "unfair" business practices and acts.  Cal. Bus. & Prof.

13  Code § 17200.  Plaintiffs' "unlawful" prong claims are based on alleged violations of the CDAFA, CIPA,

14  and the California Constitution.  Compl. ¶ 174.  Because they fail to "state a claim under the predicate

15  law . . . [his unlawful] claim also fails."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D.

16  Cal. 2017) (citation omitted).  Plaintiffs' "unfair" prong claims similarly fail, as the alleged unfair

17  business practices "overlap entirely with the business practices addressed in the . . . unlawful" claim, the

18  unfair prong cannot survive if the unlawful prong does not.  Compl. ¶ 175; *Hadley*, 243 F. Supp. 3d at

19  1104-05.  Without any additional facts specific to this claim, it is duplicative and must be dismissed.[16]

20  # V.    CONCLUSION

21      For the foregoing reasons, Gannett respectfully requests that the Court dismiss Plaintiffs' claims

22  in their entirety, with prejudice.

23

24

25  _____

26  [15] Although some district courts have found that disclosure of "personal information without consent constitutes economic injury[,]" "[t]he weight of the authority in the district and the state" holds that 'the 'mere misappropriation of personal information' does not establish compensable damages.'"  *Katz-*

27  *Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023).

28  [16] Like their unjust enrichment claim, Plaintiffs' UCL claim fails because they cannot obtain equitable relief if they have not pled they lack "an adequate remedy at law."  *Ramos*, 2024 WL 4351868, at *6.

1    Dated: June 25, 2025                          Respectfully submitted,

2                                                  WEIL, GOTSHAL & MANGES LLP

3
                                                   By:  _/s/ David R. Singh_____
4                                                        DAVID R. SINGH

5                                                  DAVID R. SINGH (Bar No. 300840)
                                                   david.singh@weil.com
6                                                  WEIL, GOTSHAL & MANGES LLP
                                                   201 Redwood Shores Parkway, 6th Floor
7                                                  Redwood Shores, CA 94065-1134
                                                   Telephone: (650) 802-3000
8                                                  Facsimile: (650) 802-3100

9                                                  DAVID L. YOHAI (admitted *pro hac vice*)
                                                   david.yohai@weil.com
10                                                 BLAKE J. STEINBERG (admitted *pro hac vice*)
                                                   blake.steinberg@weil.com
11                                                 WEIL, GOTSHAL & MANGES LLP
                                                   767 Fifth Avenue
12                                                 New York, NY 10153
                                                   Telephone: (212) 310-8000
13                                                 Facsimile: (212) 310-8007

14                                                 Attorneys for Defendant GANNETT CO., INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28